United States District Court
Southern District of Texas
**ENTERED**
March 27, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **COURTNEY CASEY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-CV-02735 |
| | § | |
| **WALMART STORES TEXAS, LLC,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

On September 12, 2019, Plaintiff Courtney Casey was shopping at a Wal-Mart in Stafford, Texas. As she walked through the meat section of the store she slipped and fell. She alleges that as a result of this fall, she suffered serious bodily injuries. She has sued Wal-Mart, seeking to hold them accountable under Texas law for negligence and premises liability. Wal-Mart has now filed a Motion for Summary Judgment, (Dkt. No. 25), arguing that Casey's only cognizable theory of recovery is under premises liability, a claim for which she cannot meet the essential elements. Particularly, the Parties disagree as to whether Casey has proved that Wal-Mart had actual or constructive knowledge of the condition that caused her accident. The Court concludes that there is a genuine issue of material fact as to whether Wal-Mart had constructive knowledge of the substance—here, a pool of dark, cloudy water—that caused Casey's slip and fall. After careful review, the Court **DENIES** the Motion for Summary Judgment.

## I. BACKGROUND

On July 13, 2021, Casey filed this lawsuit in the 190th Judicial District of Harris County, Texas. (Dkt. No. 1-1). Casey alleges that she visited Wal-Mart's Stafford location on or around September 12, 2019, (Dkt. No. 1-2 at 3), and while walking "in the meat area" of the store, she "slipped and fell on a wet floor." (*Id.*). Casey estimates, and Wal-Mart does not contest, that the puddle "was about two and a half feet long." (Dkt. No. 25-1 at 93). The puddle "stretched the length of the aisle," (*Id.* at 92), originating from the meat cooler. (*Id.* at 38). She asserts claims under Texas law for premises liability and negligence. (Dkt. No. 1-2 at 4–5). On August 20, 2021, Wal-Mart removed the case to this Court asserting diversity jurisdiction.[1] (Dkt. No. 1). The discovery period has concluded, and Wal-Mart has moved for summary judgment. (Dkt. No. 25).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying

---

[1] Neither Party contests diversity jurisdiction under 28 U.S.C. § 1332. Despite the name of the Defendant, Wal-Mart is a Delaware LLC with its principal place of business in Arkansas. (Dkt. No. 1 at ¶ 7). Casey is a Texas citizen. (*Id.* at ¶ 6). The amount in controversy exceeds $75,000. (*Id.* at ¶¶ 1, 12); (Dkt. No. 1-2 at 2).

2

the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2253, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

If the movant meets this burden, the nonmovant must come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (citation omitted). "The nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim." *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (cleaned up). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citation omitted).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means

that factual controversies are to be resolved in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III. DISCUSSION

"Texas law governs in this diversity suit." *Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 196 (5th Cir. 2014). "To determine Texas law, this court looks first to the final decisions of the Texas Supreme Court." *Id.* Casey brought two claims under Texas law—premises liability and negligence. (Dkt. No. 1-2 at 4–5). These theories of recovery are distinct; "[w]hen the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply," and "when the injury is the result of the property's condition rather than an activity, premises-liability principles apply." *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016) (citations omitted). Slip-and-fall cases ordinarily only implicate the latter. *See, e.g.*, *Austin*, 746 F.3d at 196 (5th Cir. 2014) (holding that a slip on an oily substance on the floor was an injury properly conceived as resulting from a condition on the premises rather than an ongoing activity); *see also Simon v. Johns Cmty. Hosp.*, No. 03-07-00057-CV, 2008 WL 2309295, at *2 (Tex. App.–Austin June 4, 2008, no pet.) (affirming dismissal of a plaintiff's ordinary negligence claim, explaining that it sounded in premises liability because the plaintiff's allegations focused on "the substance on the floor on which she allegedly slipped"). Nothing in the present facts indicates that ordinary negligence applies; this case is a textbook example of a premises liability claim, and Casey apparently has conceded this point. *See* (Dkt. No. 25) (making no reference to and seemingly abandoning her negligence claim). On, then, to premises liability.

4

"In a premises liability action, the duty owed by a premises owner depends on the plaintiff's status." *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 412 (Tex. 2010). One type of status is an invitee. "An invitee is one who enters the property of another with the owner's knowledge and for the mutual benefit of both." *Catholic Diocese of El Paso v. Porter*, 622 S.W.3d 824, 829 (Tex. 2021) (citation omitted). Here, both Parties agree that Casey is an invitee. (Dkt. No. 1-2 at 3); (Dkt. No. 25 at 4). Thus, under Texas law, Wal-Mart was obligated "to use reasonable care to protect" Casey "from any unreasonably dangerous condition in its store of which it had actual or constructive knowledge." *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407 (Tex. 2006). To prevail on a premises liability claim, an injured invitee must establish four elements:

> (1) the property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee.

*Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014) (per curiam). As these elements indicate, premises liability does not amount to strict liability. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002).

Under Texas law, a slip-and-fall plaintiff meets the knowledge requirement by showing "that (1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Id.* at 814. Neither side contends that Wal-Mart placed the substance on the

5

floor; thus, there must be actual or constructive knowledge in order to present a genuine issue of material fact.

Wal-Mart raises two contentions on summary judgment. First, it argues that Casey cannot satisfy the first element of premises liability under either actual or constructive knowledge. (Dkt. No. 25 at 5–11). Second, Wal-Mart argues that the store owed no duty because the condition was open and obvious. (*Id.* at 11–12). Casey responds by identifying facts that she believes support a finding that Wal-Mart had constructive knowledge of the condition, and she claims that the condition was not open and obvious. (Dkt. No. 27).

    A.    **WHETHER WAL-MART HAD ACTUAL KNOWLEDGE**

Wal-Mart argues that it had no actual knowledge of the substance on which Casey slipped. (Dkt. No. 25 at 9–10). Casey apparently concedes this point as she offers no argument or evidence of actual knowledge; instead, her response argues only that Wal-Mart had constructive knowledge. (Dkt. No. 27 at 5). Having reviewed the record before it, the Court agrees that there is no evidence in the summary judgment record of actual knowledge.[2]

    B.    **WHETHER WAL-MART HAD CONSTRUCTIVE KNOWLEDGE**

Next, the Court considers whether Wal-Mart had constructive knowledge of the liquid on the floor. Wal-Mart argues that it is entitled to judgment as a matter of law because Casey does not know how long the substance that caused the slip had been on

---

    [2]    In fact, Casey admitted as much in her deposition: "I don't have any evidence that [any store employee] knew the water was on the floor." (Dkt. No. 25-1 at 42).

the floor. (Dkt. No. 25 at 10). It characterizes Casey's temporal evidence as "mere speculation." (*Id.* at 11). Casey points to multiple pieces of evidence that she sees as sufficient, including her testimony of her own observations as well a store employee. (Dkt. No. 27).

"Constructive knowledge is a substitute in the law for actual knowledge." *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102 (Tex. 2000). To show constructive knowledge on the part of a premises owner, a plaintiff must provide evidence that the "dangerous condition existed for some length of time" in order to charge the premises owner with constructive knowledge. *Reece*, 81 S.W.3d at 815. In slip-and-fall cases, the Texas Supreme Court has made clear that plaintiffs must go beyond merely demonstrating that the condition could have possibly existed long enough to make the defendant legally responsible; rather, the plaintiff must demonstrate "that it is more likely than not" that the condition existed for a sufficient period of time. *E.g.*, *Wal-Mart Stores v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). The Texas Supreme Court, evaluating this temporal requirement, explained that testimony from the plaintiff that the substance "seemed like it had been there a while" is "mere speculative, subjective opinion of no evidentiary value." *Id.* at 937–38. In *Gonzalez*, for example, the substance was macaroni salad, and the court held that evidence of dirt in the macaroni and tire tracks through it was unpersuasive, as such evidence "can no more support the inference that it accumulated dirt over a long period of time than it can support the opposite inference that the macaroni had just been dropped on the floor and was quickly contaminated by customers and carts traversing the aisle." *Id.* at 937.

Upon acceptable evidence that the condition existed for some time, whether that time is sufficiently lengthy to hold the defendant liable "will, of course, vary depending upon the facts and circumstances presented." *Reece*, 81 S.W.3d at 816. At least two considerations are relevant for determining what constitutes a reasonable time: the proximity of the dangerous condition to an employee and whether the dangerous condition is conspicuous. *Id.*

### 1. Temporal Evidence: Casey's Testimony

Casey points to her own testimony for temporal evidence that the condition, more likely than not, existed for the requisite period of time. Although she admittedly did not know how long the liquid had been on the floor, Casey testified that she assessed the area at the time and observed a "cloudy water substance coming from the cooler."[3] (Dkt. No. 25-1 at 38). She testified that she personally observed the liquid seeping from the cooler. (*Id.* at 40) ("I saw water leaking from the cooler."). She also recalled that the customer who immediately came to her aid also observed, "Stop. It's coming from here to here." (*Id.* at 38). That statement, read in the context of Casey's deposition and viewed in the light most favorable to her, indicated that the man, like Casey, observed an active directional flow that evinced an ongoing leak, as opposed to a one-time spill. Casey's testimony that she personally observed the leak is probative of the temporal aspect

---

   [3] Casey is confident that the liquid, given its cloudy appearance, was not just water; it "had a different texture to it" and "was slimy." (Dkt. No. 25-1 at 53). Despite this characterization, both Parties consistently refer to the substance as "water." Read in context, the Court finds that this word choice does not appear to be an admission by Casey that the substance was only water, but rather simply a careless choice in verbiage.

because she also testified that the leak was gradual, (*id.* at 93), and the Parties do not dispute that the puddle was significant. (Dkt. No. 25). For instance, in another case, summary judgment was denied where the plaintiff slid on oil and testified that the ground underneath the oil was stained. *Thornton v. Racetrac Petrol., Inc.*, No. 3:13-CV-1658-P, 2014 WL 11460873, at *3 (N.D. Tex. July 31, 2014). The court held that, while "[i]t may be that oil can stain concrete with sufficient swiftness that the stain will be insufficient temporal evidence of constructive knowledge," the defendant had "failed to meet its burden on this point." *Id.* Slip-and-fall plaintiffs "may use circumstantial evidence to meet the temporal requirements of constructive knowledge." *Moreno v. Wal-Mart Stores Tex., LLC*, 506 F. Supp. 3d 503, 509 (S.D. Tex. 2020). In *Moreno*, the plaintiff slipped on a puddle of approximately one gallon of water; on the temporal requirement, the court found a question of material fact existed because the water pooled on top of a drain and the puddle was large enough, given that drains typically do not clog and back up instantaneously. *Id.* at 508–09. Similarly, Casey's testimony might lead a reasonable mind to conclude that the liquid, in light of the gradual nature yet substantial size of the leak, had accumulated over a long enough period for Wal-Mart to have had a reasonable opportunity to discover it.

Wal-Mart labels Casey's attempt to identify the source of the spill as "mere speculation" and asserts that her testimony is "nothing more than a guess." (Dkt. No. 25 at 10–11). This characterization is unpersuasive because Casey's testimony relays what she directly observed. (Dkt. No. 25-1 at 38) (Casey physically observed liquid "seeping out of the creases of the cooler and . . . coming out into the aisle"). As a firsthand

9

observation, Casey's testimony is probative evidence that stands in stark contrast from the "mere speculative, subjective opinion" that *Gonzalez* found to be void of evidentiary value. 968 S.W.2d at 937–38. Wal-Mart also argues that Casey cannot establish constructive knowledge because she is unable to precisely prove how long the spill was on the ground. (Dkt. No. 25 at 11). But the summary judgment burden of proof does not require her to pinpoint how long the condition existed; rather, her burden is to show that the condition existed for a sufficient amount of time, *Reece*, 81 S.W.3d at 815, which is a fact-intensive inquiry for which she has offered sufficient evidence to proceed to a trier of fact.[4]

### 2. Temporal Evidence: Tran's Testimony

While Casey's testimony alone is sufficient evidence to survive summary judgment, Thanh Tran's testimony further supports denial Wal-Mart's Motion. At the time of his testimony, Tran had worked for Wal-Mart for almost fifteen years. (Dkt. No. 27-4 at 8). He worked in the deli, bakery, and produce area. (*Id.* at 9). He did not remember anything about the incident involving Casey. (*Id.* at 9–10). When Tran was provided with photographs from the incident, Tran acknowledged that the manner in which the water was spread out indicated that store policy had been violated; in fact, he explicitly agreed that the water, as observed in the photograph, likely had been on the floor for a "long time." (*Id.* at 15).

---

[4] The courts in *Thornton* and *Moreno* similarly denied summary judgment despite that the temporal evidence could not ascertain the condition's existence down to the minutes or even hours. *See Thornton*, 2014 WL 11460873, at *3; *Moreno*, 506 F. Supp. 3d at 509.

10

On first blush, testimony that the liquid looked like it had been there for a long time might appear to be the type of speculative testimony disapproved by *Gonzalez*. 968 S.W.2d at 937–38. But Tran's testimony is not the merely subjective, speculative testimony that the *Gonzalez* court rejected. When an employee is trained in cleanups, and his job is to clean spills or hazards, his evaluations of spills carry much more reliability than the same testimony by an ordinary plaintiff, from whom it would be rightfully rejected under *Gonzalez*. *Id.* Here, Tran had worked at Wal-Mart for almost 15 years when he reviewed photos from the incident. In his role, he and certain other employees routinely monitored and cleaned spills and other hazards. (Dkt. No. 27-4 at 10-11); (Dkt. 27-5 at 9). In the post-*Gonzalez* line of cases, accounts that the substance "looked like" it had "been present for a while" have been rejected when they come from the plaintiff.[5] *See, e.g.*, *Threlkeld v. Total Petrol., Inc.*, 211 F.3d 887, 894 (5th Cir. 2000). But when that assessment comes from an employee and is based on the particular shape of the spill, constructive notice "can be proven by the quality of the substance on the floor." *Cox v. H.E.B. Grocery, L.P.*, No. 03-13-00714-CV, 2014 WL 4362884, at *3 n.2 (Tex. App.—Austin Aug. 27, 2014, no pet.) (mem. op.). In *Kroger Stores, Inc. v. Hernandez*, the court found sufficient evidence to prove constructive notice where the vomit was "already dried where it looks like a cake." 549 S.W.2d 16, 17 (Tex. Civ. App.—Dallas 1977, no writ). Similarly, here, unlike dirt marks or tire tracks which might incur mere moments after a condition is created, Tran—who holds extensive experience with spill clean-ups—may

---

[5] In *Gonzalez*, the account that the substance looked like it had been there for a while came from the plaintiff's daughter, who accompanied the plaintiff during her visit. 968 S.W.2d at 936.

11

well have noticed something about the puddle's shape which indicated that it *must have* formed over a long period of time. Tran's testimony also supports a finding that the condition existed for a long time and creates a factual question.

### 3. Proximity and Conspicuousness

Having held that there is a genuine dispute as to whether the condition existed for the requisite amount of time, the inquiry turns to whether that time is sufficiently lengthy in light of the facts and circumstances, looking to the proximity of the dangerous condition to an employee and whether the condition was conspicuous. *Reece*, 81 S.W.3d at 816.

As for proximity, Casey claims that, when she fell, she noticed about four employees nearby—very close to her, less than six to ten feet away. (Dkt. No. 25-1 at 87). She believed that "at least a couple of employees" were within 15 feet of the condition and could have seen it. (*Id.* at 87–88). There is also evidence that Wal-Mart specifically assigns employees to monitor the meat area. (Dkt. No. 25-2 at 25); (Dkt. No. 25-3 at 29). As for conspicuousness, neither side disputes that the puddle was large. (Dkt. No. 25). Moreover, Vicky Renee Perez, the assistant manager of the store, testified that the employees have an unobstructed viewpoint down the aisle, (Dkt. No. 25-2 at 38), and Tran testified that he, as a worker, would have seen the water. (Dkt. No. 27-4 at 13). In totality, these circumstances have sufficiently created a factual question as to whether the time was sufficiently lengthy for Wal-Mart to have had a reasonable opportunity to discover the condition.

### C. WHETHER THE CONDITION WAS OPEN AND OBVIOUS

Finally, Wal-Mart attempts to argue that, even if it knew or should have known about the puddle, Wal-Mart owed no duty to Casey because the condition was open and obvious. (Dkt. No. 25 at 11–12). Casey counters that simply because she could have seen the condition does not make it open and obvious. (Dkt. No. 27 at 11–13). The Court agrees with Casey.

Whether a condition is open and obvious is a question of law for the court. *Pena v. Harp Holdings, LLC*, No. 07-20-00131-CV, 2021 WL 4207000, at *7 (Tex. App.—Amarillo Sept. 16, 2021, no pet.). When a condition is open and obvious, and the owner or operator is not in a better position to discover it, the invitee has the responsibility to take reasonable measures to avoid the harm. *See Austin*, 465 S.W.3d at 203. Texas law makes clear that something is not open and obvious simply because it can be seen; it is "better considered as a summation of strong facts that display contributory negligence as a matter of law." *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 520–21 (Tex. 1978).

In determining whether a condition is open and obvious, courts have looked to whether the danger was concealed. *See Cienfuegos v. Target Corp.*, No. 1:20-CV-192, 2021 WL 5889997, at *5–6 (S.D. Tex. Nov. 15, 2021) (collecting cases). There is some basic intuitiveness in this inquiry; examples of open and obvious conditions "include walking into an open manhole, entering a darkened stairway, or driving into flood waters." *McCullough v. Wal-Mart Stores Tex., LLC*, No. 3:19-CV-00230, 2020 WL 6786060, at *4 n.2 (S.D. Tex. Sept. 22, 2020). But Wal-Mart has cited no support for its argument that a relatively clear liquid spill can rise to the level of being open and obvious as a matter of

13

law, and the Court only finds support for the contrary. *See, e.g.*, *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 538 (Tex. 1975) (holding that a wet floor just inside the grocery store's entrance, despite that it had been raining, was not open and obvious as a matter of law); *Wal-Mart Stores Tex., LLC v. Autrey*, No. 06-19-00095-CV, 2021 WL 1216890, at *5 (Tex. App.—Texarkana Apr. 1, 2021, no pet.) (mem. op.) (holding that a jury could have inferred that a spill consisting of orange soda and ice was not open and obvious). To deem this and similar conditions open and obvious, as a matter of law, would expand the defense beyond recognition. Wal-Mart falls short of proving its application at the summary judgment stage.

## IV.  CONCLUSION

Casey, having presented sufficient evidence as to the length of time, proximity of employees, and conspicuousness of the condition, has created a question of material fact as to whether Wal-Mart had constructive knowledge. As such, the Court **DENIES** Defendant Wal-Mart Stores Texas, LLC's Second Motion for Summary Judgment, (Dkt. No. 25), and a jury—not this Court—must resolve whether Wal-Mart had constructive knowledge for the purposes of Casey's premises liability claim.

It is SO ORDERED.

Signed on March 26, 2023.

                                                                          **DREW B. TIPTON**
                                                        **UNITED STATES DISTRICT JUDGE**